UNITED STATES DISTRICT COURT                          b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

RECEIVED
USDC, WESTERN DISTRICT OF
TONY R. MOORE, CLERK
8 / 18 / 15

JOSEPH ANTHONY DANIEL,          CIVIL ACTION
        Petitioner             SECTION "P"
                               NO. 1:15-CV-00067
VERSUS

ERIC HOLDER, JR., et al.,       JUDGE DEE D. DRELL
        Respondents            MAGISTRATE JUDGE JAMES D. KIRK


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2241 by petitioner Joseph Anthony Daniel

("Daniel"), a native and citizen of Grenada, on December 8, 2014[1]

(Doc. 1).   Daniel is contesting his continued detention by

Immigration and Customs Enforcement ("ICE"), Department of Homeland

Security, while awaiting removal from the United States.   Daniel

contends he has been detained by ICE pending removal since his

order of removal became final on June 26, 2012 and that he has

fully cooperated with all efforts by ICE to expedite his removal to

Grenada (Doc. 1).   Daniel seeks release from pre-removal detention

pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001).

_____

[1] This petition was originally filed in the Northern
District of Florida, and transferred to the Western District of
Louisiana on January 13, 2015 (Doc. 1).

Daniel also challenges the use of his possession of cocaine convictions as a basis for his removal, seeks to have his status adjusted to that of a "national of the United States," and appears to allege a claim for money damages pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971) (Doc. 24).

Respondent answered the petition (Doc. 23).  Daniel filed a motion for summary judgment by (Docs. 24), to which the Respondents responded (Doc. 26) and Daniel filed a reply (Doc. 27).

Law and Analysis

Zadvydas Claim

Daniel contend he should be released pending his removal, pursuant to Zadvydas.

Although the INS has 90 days to remove an alien after he is ordered removed, 8 U.S.C. § 1231(a)(1)(A), the Supreme Court has held that Section 1231 permits the detention of criminal aliens beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States.  Pursuant Zadvydas, detention for up to six months after the removal order becomes final is "presumptively reasonable."  Zadvydas, 533 U.S. 678, 121 S.Ct. 2491 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

After six months, however, "once the alien provides good

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  Zadvydas, 121 S.Ct. at 2505.  "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 121 S.Ct. at 2505.

The six-month period is tolled if the alien "hampers" his deportation by, for example, initiating litigation regarding the validity of the deportation order or obstructing the INS from obtaining travel documents.  Also, if an alien obtains a stay of the deportation order, the six-month period is tolled.  When the actions of an alien prevent the INS from effecting deportation, delaying tactics do not support the alien's claim for release from deportation.  An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.  Balogun v. I.N.S., 9 F.3d 347, 351 (5th Cir. 1993).  Also, Mytuyuk v. Young, 347 Fed.Appx. 50, 51

(5th Cir. 2009); <u>Benn v. Bureau of Immigration and Customs Enforcement</u>, 82 Fed.Appx. 139 (5th Cir. 2003)(Benn's incomplete and conflicting statements to the INS hampered the INS's ability to effectuate removal and served to extend the removal period).

Respondents show, in an affidavit by Brian Gueringer, the Assistant Field Office Director of the United States ICE facility in Oakdale, Louisiana, that Daniel was admitted to the United States in 1978 as a lawful permanent resident, was convicted of carrying a concealed weapon in 1993, was convicted of resisting arrest in 1995, and was convicted of possession of cocaine in 2003, 2007, and 2009; Daniel was also arrested three additional times for carrying a concealed weapon (Doc. 23, Ex. 1).  Gueringer states in his affidavit that Daniel was arrested by ICE in February 2012, ordered removed in March 2012, and the removal order became final in June 2012 (Doc. 23, Ex. 1).

Gueringer states in his affidavit that ICE requested a travel document from Grenada in July 2012 (Doc. 23, Ex. 1).  Gueringer further states in his affidavit that Daniel was given post-order custody reviews in September 2012, February 2013, April 2013, June 2013, October 2013, and December 2013, and decisions to continue detention were issued each time[2])(Doc. 12, Ex. 1).  Gueringer states in his affidavit that, in December 2013, the Embassy of

---

[2] Daniel also argues that he did not receive an HQ POCRU review.  However, there is an HQPODU review in the records submitted by Daniel with his petition (Doc. 1, Ex. p. 36/56).

4

Grenada advised ICE that Daniel's citizenship had been verified and that it was authorized to issue a travel document (Doc. 23, Ex. 1). Gueringer shows in his affidavit that Daniel had additional post-order custody reviews in January 2014, Mach 2014, May 2014, August 2014 and December 2014, and that Daniel's detention was continued each time (Doc. 23, Ex. 1).

Gueringer states in his affidavit that, on November 20, 2014, Grenada issued a travel document for Daniel that was valid for one month; Daniel was scheduled for removal on December 3, 2014 but the flight was cancelled due to country clearance issues (Doc. 23, Ex. 1). Gueringer shows in his affidavit that Grenada issued a second travel document on January 12, 2015 and Daniel's removal was scheduled for January 30, 2015, but Daniel refused to board the flight and his travel document expired (Doc. 23, Ex. 1). Gueringer further shows in his affidavit that Daniel was served with a notice of failure to comply in February 2015, received a third travel document from Grenada in March 2015, again refused to board his removal flight on March 11, 2015, and the third travel document expired on March 13, 2015 (Doc. 23, Ex. 1).

From July 2012 through November 2014, Daniel's removal was delayed by Grenada's process of verifying Daniel's citizenship. After January 2015, Daniel's continued detention has been due to Daniel's own obstructive actions in twice refusing to board the aircraft for removal, and Daniel's obstructive efforts served to

extend the removal period.

Moreover, it is apparent that, once the citizenship verification process was completed, Grenada has not had any difficulty or delays in issuing travel documents for Daniel.[3] Therefore, Daniel has not shown there is no significant likelihood of his removal in the reasonably foreseeable future and he is not entitled to relief under Zadvydas.

Daniel's request for release pursuant to Zadvydas should be denied and dismissed with prejudice.

Bivens Claim

To the extent that Daniel is alleging a claim for monetary damages pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971),[4] that claim should be dismissed without prejudice. Daniels must file a separate Bivens suit, on the proper forms, naming specific defendants.

---

[3] Daniel contends that, when he told Grenada that he had filed a habeas petition, Grenada suspended issuance of a travel document for him. Since a suspension in travel documents due to Daniel filing a habeas petition and informing Grenada about it is directly attributable to Daniel, his removal period is extended.

[4] Bivens defendants are federal officials brought into federal court for violating the Federal Constitution. Bivens-type actions may be brought only against federal agents and not federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); Whitley v. Hunt, 158 F.3d 882 885 (5th Cir. 1998). Under Bivens, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights. Channer v. Hall, 112 F.3d 214, 216 (5th Cir. 1997).

Remaining Claims

Daniel also challenges the use of his simple possession of cocaine convictions as a basis for removal and additionally asks for an adjustment of status (Doc. 27).

On May 11, 2005, the Real ID Act of 2005 was enacted as part of the Emergency Supplemental Appropriations Act for Defense, The Global War on Terror, and Tsunami Relief, 2005. P.L. 109-13, 2005 HR 1268.   Section 106 of the Act amended 8 U.S.C. § 1252(a) by providing that a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of the Immigration and Nationality Act.   Toledo-Hernandez v. Mukasey, 521 F.3d 332, 333 (5th Cir. 2008), citing   Rosales v. Bureau of Immigration and Customs Enforcement, 426 F.3d 733, 736 (5th Cir.2005), cert. denied, 546 U.S. 1106, 126 S.Ct. 1055 (2006).

Thus, the Real ID Act deprives the district courts of habeas jurisdiction to review orders of removal, 8 U.S.C. § 1252(a)(5), and further provides that habeas cases "challenging a final administrative order of removal" shall be transferred to the courts of appeals to be treated as petitions for judicial review, Real ID Act, § 106(c).   See Toledo-Hernandez, 521 F.3d at 334.

Insofar as Daniel's habeas petition challenges the basis for his original removal order and asks for an adjustment of status,

this court lacks jurisdiction to consider it.[5]  Therefore, Daniel's habeas petition should be transferred to the Fifth Circuit Court of Appeals for consideration of those issues.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Daniel's motion for summary judgment (Doc. 24) be DENIED AND DISMISSED WITH PREJUDICE and THAT Daniel's Zadvydas claim for pre-removal release from detention be DENIED AND DISMISSED WITH PREJUDICE.

IT IS ALSO RECOMMENDED that Daniel's Bivens claims be DISMISSED WITHOUT PREJUDICE.

IT IS ALSO RECOMMENDED that Daniel's habeas petition be TRANSFERRED TO THE UNITED STATES FIFTH CIRCUIT COURT OF APPEALS for consideration of Daniel's challenge to his removal order and request for an adjustment of status.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.  No other briefs  (such as

---

[5] The undersigned issued a Report and Recommendation to the District Judge on Daniel's Zadvydas claim.

supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged.  Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases (and other habeas cases, see Rule 1(b)) in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See 28 U.S.C. § 2253(c)(2).* **A courtesy copy of the**

9

memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana on the ___18___ day of August 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE